PRATT v. CANFIELD, *Appellant.*

**Vendor and Purchaser**: LANDLORD AND TENANT: ADVERSE POSSESSION. One who holds land under a contract of purchase cannot, by accepting a lease from a stranger, convert his holding into an adverse possession as against his vendor; and if one so holding abandons the land and afterwards re-enters under a lease from a stranger without having rescinded his contract, and without any one having in the meantime taken possession, his re-entry will be held to relate back and continue the original possession, and not to create a new and adverse possession.

*Appeal from Linn Circuit Court.*

*W. H. Brownlee* for appellant.

*S. P. Huston* for respondent.

HENRY, J.—The plaintiff, Pratt, sued the defendant in the Common Pleas Court of Linn county, to enforce the specific performance of a contract between the parties, by which plaintiff sold and defendant purchased the n w qr. of section 14, township 57 of range 21, in Linn county, Missouri.

The contract was in writing. The price agreed upon was $1,280, to be paid in three payments, the first of which $640, was to be made on the 1st day of January, 1871, and the balance in two equal annual payments, one on the 1st day of April, 1872, and the other on the 1st day of April, 1873, both to bear interest from April 1st, 1871, at seven per cent. per annum. On payment of $640 on the 1st day of January, 1871, Pratt was to execute and deliver to defendant a general warranty deed, conveying to him the said land, and to deliver to him possession of the land " on the 1st day of March, 1871, or as soon thereafter as plaintiff could arrange to do so." Plaintiff alleged that he had always been, and still was ready and willing to perform said agreement on his part, and to deliver to defendant possession of said land at the time specified in said agreement; that on the 1st day of January, 1871, and at divers times since, he tendered to the defendant his general warranty deed conveying to defendant said land, but defendant refused to accept it and pay the purchase money, or any part of the same, and again tendered said deed in court for the defendant, asking a specific performance. Defendant in his answer admitted the contract as alleged by plaintiff, but denied that plaintiff had a title to the land, alleging that one H. Degraw and Harry Lander were the owners of the land and had sued plaintiff for the same, and that said suit was then pending in this court on appeal from the Linn county circuit court; denied that plaintiff ever tendered him a deed for the land, or that it was at any

time in his power to make defendant a deed according to the terms of the contract; claimed by way of recoupment, if the court should decree a specific performance, damages for 500 valuable timber ties of the value of $500, which he charged plaintiff with having cut down and converted to his own use, and asked for a rescission of the contract. The replication denied the new matter set up in the answer. In the Common Pleas Court, at the August term of said court, held in September, 1874, there was a trial of the cause and the court rendered a decree as prayed in plaintiff's petition, from which defendant appealed to the circuit court of Linn county, where it was affirmed, and from that judgment he has appealed to this court.

The evidence of plaintiff's title was a patent from the government of the United States, for the land in question to Abraham Smith, dated June 8th, 1819, a deed from said Smith to Levi F. Stephens, conveying said land to said Stephens, and a deed from said Stephens to plaintiff, dated 21st day of October, 1859. There was no evidence of title in Degraw and Lander, or either of them, or any one else except Pratt, unless the facts hereinafter stated showed an adverse possession of ten years in Degraw under color of title. Although the tract is military bounty land, ten year's adverse possession by Degraw would, under our statute, be necessary to defeat Pratt's title, Pratt's right of entry having accrued before the passage of the act of 1866. *Neilson v. The County of Chariton et al.*, 60 Mo. 386. If Degraw had an adverse possession it commenced in 1865 or 1866. The evidence on this point showed that in 1860, Pratt, by a contract in writing, sold the land to one Morrow, who took possession of the land, made improvements and remained in actual possession until 1864. About that time he moved off the land and was absent from the State for twelve months. He then returned and again went into possession of the land—Degraw says in his testimony under a lease from him. He continued in possession until about the 29th of July, 1870, when the contract between

him and Pratt was, by an agreement in writing, rescinded. The following is a copy of the rescinding agreement: "Memorandum of an agreement by and between Isaac V. Pratt, of the first part, and Samuel Morrow, of the second part, witnesseth, the said Morrow hereby surrenders the possession received from the said Pratt on the 6th day of November, 1860, and held under contract of purchase, &c., to this date, of the northwest quarter of section No. fourteen, in township No. 57, north, and range No. twenty-one west, and in consideration of such possession, said Pratt hereby rescinds said contract of purchase, and agrees to let Michael Baker have the corn now growing on the land and till March 1st, 1871, to take the same off the land." This agreement was signed by both parties. Degraw never had actual possession of the land unless the possession of Morrow, under a lease from Degraw, was such possession. It is not pretended, nor is there any evidence, whatever, that any one, except Morrow, was in actual possession of the land from 1860 to 1870, when he rescinded his contract with Pratt. Could he, while in possession as a purchaser from Pratt, by accepting a lease from Degraw, convert possession into an adverse possession against Pratt?

"The rule of law that a person coming into possession of land under the agreement or license of another, cannot be permitted to deny the title of the latter, when called upon to surrender, is of almost universal application. Even if he had a valid title at the time, he is deemed to have waived it, and as between the parties, to have admitted title in the person under whom he entered." Tyler on Eject. and Adverse Possession, 166; *Jackson v. Ayers*, 14 John. 224. "And a claim of title which cannot be set up by a person while in possession, cannot be set up by another person who comes into possession under him." Tyler on Eject. and Adv. Possession, 166; *Jackson v. Harder*, 4 John. 202; *Jackson v. Bard*, Ib. 230; *Jackson v. Walker*, 7 Cow. 637. In *Jackson v. Harder*, Chancellor Kent observes: "This brings us then to this point of inquiry whether a

claim or title residing in Baker, and which he could not
have set up while he was in possession, can be permitted
to be set up by another person who succeeds Baker to the
possession, and probably by collusion with him. I am
clearly of opinion that this ought not to be permitted, and
that it would be inconsistent to permit the defendant to
protect himself by a claim or title in Baker, which Baker
himself could not have set up had he remained in posses-
sion." If, after a rescission of the contract, without any
agreement on the part of Morrow to re-deliver possession
of the premises to Pratt, Morrow had continued in posses-
sion, and refused to give Pratt possession, will it be con-
tended that he could have successfully defended himself
against an action of ejectment by Pratt by proving title
in Degraw, and a lease from Degraw to himself? So if he
had delivered possession to Degraw instead of accepting a
lease from him, Degraw would have stood in his shoes and
held the land under Pratt. There was, therefore, no ad-
verse possession shown by the evidence against Pratt, but
on the contrary a continuous, actual, uninterrupted posses-
sion by Pratt for a period of ten years, and still continuing
so far as the testimony shows.

The evidence conclusively proved a tender of the deed
by Pratt to Canfield; Canfield himself testified to that fact,
and that he refused to receive it, unless Pratt would also
give him a bond with security to indemnify him. He tes-
tified also that he not only declined to accept the deed,
except upon the condition of receiving a bond of indem-
nity, but that he refused to rescind the contract which was
proposed by Pratt, and he also stated that he had a con-
tract with Degraw for the purchase of the land. Counsel
for defendant contend that a court will not decree a speci-
fic performance of a contract in favor of a vendor whose
title is doubtful, and that the fact that a suit is pending
here in which Degraw and Lander are plaintiffs against
Pratt to recover this land, should prevent an affirmance of
the judgment. The authorities cited to establish the prop-

osition that a court of equity will not compel a vendee to accept a doubtful title and pay the purchase money, fully sustain that position; but in this case there is nothing in the evidence which raises a doubt of Pratt's title. The case of Degraw and Lander against Pratt, was tried in the circuit court of Linn county before this case was tried there, and if defendant did not introduce all the evidence in this cause, tending to prove title in Degraw and Lander, it was his fault. We must decide this case upon the record before us, which shows a perfect title in Pratt, and no reason whatever why defendant should not be compelled to perform his contract. Degraw says in his testimony that Morrow, in 1864, sold his improvements, abandoned the land and left the State, but returned in about a year, and again went into possession under a lease from him. There is no evidence that Pratt knew that he had abandoned the land, or that he afterwards entered under a lease from Degraw, and there was nothing to show that Morrow was not still in possession under his contract with Pratt.

But we place Pratt's right upon the broad ground that Morrow, having once taken possession under his contract with Pratt, although he may have afterwards abandoned it, yet if no one else took possession, his subsequent entry, whether under a lease from Degraw or not, related back to and continued the original possession obtained from Pratt. His abandonment of the possession of the land was not a rescission of the contract of purchase; it did not alter the relation of vendor and purchaser betwixt him and Pratt; it did not effect a change of possession in law. He or Pratt was still in possession, and he could not, while the contract between him and Pratt was in full force, enter upon the land under a contract with or lease from another and hold it adversely to Pratt. If he could not, then there is not, so far as the record shows, a shadow of doubt that Pratt's title is perfect. Not only was there no adverse possession in Degraw for ten years, but he never

was in possession adversely to Pratt for any length of time whatever.

All concurring, except SHERWOOD, C. J., absent, the judgment of the Common Pleas Court is affirmed.

AFFIRMED.