MABARY *et al.*, *Appellants*, v. DOLLARHIDE *et al.*

1. **Administrator, Purchase of Land by : TRUST.** An administrator, who purchased lands, taking the deed to himself as administrator, under a judgment in an attachment proceeding instituted by him for a debt due the estate *held* to have received the title as an individual, but in trust for the heirs and creditors of the estate.

2. **Vendor and Vendee : ADVERSE POSSESSION.** The relation of a vendor and vendee, where the latter takes possession of the land under an executory contract, is for many purposes like that of a landlord and tenant, and the vendor may avail himself of the adverse possession of the vendee, in making out the statutory period of limitation.

3. **Limitation : ADVERSE POSSESSION ESSENTIAL.** Possession, to avail as a defense under the statute of limitations, must be adverse as well as continuous.

4. **Ejectment : STATUTE OF LIMITATIONS.** The mere recovery of a judgment in ejectment will not suspend the running of the statute of limitations in favor of him against whom it is rendered.

5. ——— : ———. There must, to have that effect, be possession taken under the judgment or something done to make the defendant's possession subordinate to the plaintiff's title.

*Appeal from Hickory Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*Amos S. Smith* for appellants.

(1) The court erred in admitting in evidence, as color of title, the collectors' and sheriff's deeds to Wm. Dollarhide. (2) The court erred in refusing plaintiffs' instructions numbers 2, 7 and 21. (3) The court erred in admitting in evidence the entry of abstract in book "E," page 138, of the records of Hickory county for the purpose of showing that interlineations and erasures had

been made in deed offered by the plaintiff. (4) The court erred in admitting in evidence the petition, instructions and judgment in case of Dollarhide *v.* Rains *et al.* (5) The court erred in excluding the evidence offered by the plaintiffs by which they proposed to show they were in possession of part of the Foster lands named in the deeds offered in evidence by the defendant Dollarhide, and claiming same under decree from McClurg. (6) The court erred in finding the issue for the defendant. Tiedeman on Real Property, sec. 714; *Bowman v. Lee,* 48 Mo. 335; *Moore v. Harris,* 91 Mo. 616; *Wilson v. Albert,* 89 Mo. 537; *Wilson v. Lerche,* 90 Mo. 473; *Mason v. Black,* 87 Mo. 329; *Pike v. Robertson,* 76 Mo. 615; *Bradstreet v. Kinsala,* 76 Mo. 63; *Dunn v. Miller,* 75 Mo. 260; *Norfleet v. Hutchins,* 68 Mo. 597; *Lynde v. Williams,* 68 Mo. 360; *Hamilton v. Boggess,* 63 Mo. 233; *Turner v. Hall,* 60 Mo. 271; *Crispen v. Hannavan,* 50 Mo. 536.

*Ross & Rechow* for respondents.

(1) The possession of the vendee inures to the benefit of the vendor where no deed is made. *Pratt v. Canfield,* 67 Mo. 50–53; *Ash, Adm'r, v. Holder,* 36 Mo. 163–166; *Pershing v. Canfield,* 70 Mo. 142; *Willison v. Watkins,* 3 Peters (U. S.) 43; *Galloway v. Finley,* 12 Peters (U. S.) 264. (2) Under such circumstances the parties stand in relation of landlord and tenant. Authorities, *supra.* (3) The circuit court having found the issue of fact for defendant, the supreme court will not review the evidence.

BLACK, J.—This is an action of ejectment for one hundred and twenty acres of land in Hickory county. The suit was commenced in April, 1883, and the plaintiffs and appellants are the heirs of John Mabary deceased. The title is conceded to have been in A. H. Foster.

James R. Wilson, as administrator of the Mabary estate, sued Foster for a debt due the estate and caused the land to be attached in June, 1864. It was sold under a judgment recovered in · that suit, and Wilson became the purchaser taking the deed to himself as administrator. The sale was made in September, 1865, and the deed is dated August, 1867. Wilson by a quit-claim deed conveyed to these plaintiffs in March, 1866. Wilson inventoried the property thus purchased as the property of the estate, and pursuant to an order of the probate court, made in October, 1868, sold the land for the purpose of paying the debts of the estate, and McClurg became the purchaser and received an administrator's deed dated in August, 1869. McClurg purchased the same land in August, 1868, at a sheriff's sale made under a judgment in another attachment suit brought by Wilson as administrator of the Mabary estate against Foster. Wilson and his wife made a deed of the land to McClurg in August, 1867.

The defendants in this suit put in evidence a sheriff's deed to the defendant Dollarhide, dated in 1864, and some tax deeds dated in 1866 and 1869. The sheriff's deed purports to convey the interest and title of Foster, but it and the tax deeds were excluded by the court. The sheriff's deed seems to be the same deed which was held to be of no validity in *McClurg v. Dollarhide*, 51 Mo. 347. This and the tax deeds were then read in evidence by the defendants for the sole purpose of showing color of title.

The evidence shows that Dollarhide took possession in 1865 or 1866 and that he went into possession under his deed, dated in 1864. Bozarth took possession under Dollarhide, and after him the land was occupied by Rains, to whom Dollarhide made a title bond, dated in 1868. This title bond, it may be stated, included other land and was made to Rains and Fisher. Rains remained in possession until 1881, but never completed

the payment of the purchase money, and hence never got a deed from Dollarhide.

On the sixth of November, 1873, McClurg brought a suit in ejectment against Rains to recover the land, to which suit Dollarhide was made a defendant on his own motion. McClurg obtained a judgment for the possession in November, 1875, and Rains and Dollarhide appealed to this court, but the appeal was dismissed at their request in 1878. It seems a writ for the possession of the land was never issued on this judgment.

Whilst this suit of ejectment of McClurg against Rains and Dollarhide was pending, the plaintiffs in this present suit commenced a suit in equity against McClurg to set aside the several deeds to him on the ground that they had been procured by a fraudulent combination with Wilson, the administrator of the Mabary estate. The suit in equity was commenced in December, 1873 ; and in November, 1877, the circuit court made a decree setting aside the deeds to McClurg, and vesting the title acquired by him in the plaintiffs in that suit, who are the plaintiffs in this suit. That decree was affirmed by this court at our October term, 1881. See 74 Mo, 575.

1. Going back now to the beginning of the plaintiff's title, it is suggested that Wilson as the administrator of the estate of John Mabary had no power to, and could not, become the purchaser of real estate. To this we answer, the title passed to him as an individual, and he held it in trust for the heirs and creditors of the estate. Indeed he inventoried the land as the land of the estate, procured an order for the sale thereof, and sold it as the property of the estate. The court below held, and correctly held, that the sheriff's deed to Wilson, as the administrator of Mabary, conveyed to Wilson all of the title of Foster, the judgment debtor. In saying this we have no reference to subsequent statutes relating to the purchase of land by guardians,

administrators and the like. The decree against McClurg rendered in 1877, vested the title in the plaintiffs, who have, therefore, shown a perfect and complete title ; and the defendants' deeds being worthless as actual conveyances, the plaintiffs' must prevail, unless the defendants have a good defense under the statute of limitation.

2. The evidence shows, or at least tends to show, that Dollarhide took possession in 1866, and held possession until he made the title bond to Rains in 1868. Rains never paid the consideration and hence received no deed. The relation of a vendor and a vendee, when the vendee takes possession under an executory contract, for many purposes is likened to that of landlord and tenant. *Adair v. Adair*, 78 Mo. 630; *Pershing v. Canfield*, 70 Mo. 141; *Pratt v. Canfield*, 67 Mo. 50. As Rains had possession from Dollarhide under an unperformed contract for the purchase of the land, his possession was in effect the possession of Dollarhide, and the latter may avail himself of the adverse possession of the former in making out the statutory period of limitation.

3. The court sitting as a jury gave, among others, this instruction : "If there was a judgment rendered in favor of Joseph McClurg and against Rains and Dollarhide for the possession of the land in question, and the appeal taken by said defendants in that case to the supreme court was voluntarily dismissed by them, then such act of dismissal by them must be taken as an abandonment by them of all claims adverse to McClurg in such case."

Every fact stated in this instruction was proved by undisputed evidence ; and the instruction being given, the judgment should have been for the plaintiffs, yet we find it was for the defendants. It is to be remembered that the appeal in the ejectment suit of McClurg *vs.* Dollarhide and Rains was dismissed in this court in 1878. The suit of plaintiffs against McClurg

for title was ended in this court in 1881, the decree having been entered in the circuit court in 1877. By that decree and its affirmance here the plaintiffs acquired all the title of McClurg. The decree vested in them all the rights which McClurg had. Any act or thing done by Dollarhide and Rains, which would have been available to McClurg to defeat a defense under the statute of limitations set up by them against McClurg, is available to the plaintiff for a like purpose and to the same extent. Now if, as this instruction says, the act of dismissing the appeal amounted to an abandonment of all adverse claims against McClurg, then there was a break in the continuity of adverse possession. The possession to be of any avail in a defense under the statute of limitations must be not only continuous, but it must be adverse. This principle of law was well stated in the eleventh instruction given by the court. If the dismissal of the appeal operated as an abandonment of adverse claims against McClurg, that abandonment covered the whole time the ejectment suit was pending. The ten years had not elapsed at, or before, the commencement of that suit, nor can it be claimed that there has been ten years of adverse possession since the dismissal of that appeal. It follows that the judgment rendered by the circuit court is at war with this instruction and the undisputed evidence upon which it is based. The judgment ought therefore not to stand unless it is clearly for the right party, and that cannot be said from the present record.

4. The instruction which we have been considering, the substance of which has been stated, was given at the request of the plaintiffs and this being their appeal, no exceptions were taken to it. Since, however, the case must be remanded for a new trial, we deem it prudent to pass upon the question whether that instruction states a correct proposition of law. This leads to the inquiry whether a judgment in ejectment, not followed

up by a writ or by taking possession under it, will break the adverse possession of those against whom it is rendered. In *Brolaskey v. McClain*, 61 Pa. St. 146, one Wester, having been in possession of the land for eight years, was then sued in an action of ejectment, and seven years thereafter a judgment was recovered against his heirs, it would seem, and they continued in possession for a period of ten or more years after the date of the judgment, and it was held that the recovery of the judgment stopped the running of the statute of limitations. And in Michigan it is held that the continuity of adverse possession is broken by a decree requiring the occupant to convey the land even if the actual possession is not disturbed. *Gower v. Quinlan*, 40 Mich. 572. On the other hand it was said in *Smith v. Trabue*, 1 McLean, 87 : "A judgment in an action of ejectment against a defendant, who holds adversely, does not of itself suspend the statute of limitations. To do this there must be a change of possession." The following cases are to the same effect : *Doe v. Reynolds*, 27 Ala. 364; *Jackson v. Haviland*, 13 Johns. [N. Y.] 229. We are not aware of any decision of this court having any direct bearing upon the question. We cannot see how the mere recovery of a judgment in an action of ejectment can suspend the running of the statute of limitations. To have that effect there must be possession under it, or something done to make the defendant's possession subordinate to the plaintiff's title. If we are correct in this conclusion then it seems equally clear that the mere fact that the defendants in the ejectment suit dismissed their appeal after judgment against them, does not amount to an abandonment of all adverse claims to the land. The dismissal of the appeal is suggestive that some terms had been agreed upon by the parties ; but the mere dismissal of the appeal, nothing more appearing, cannot have the effect ascribed to it by the instruction in question and it should not be given.

We do not say that it was necessary to sue out a writ and turn the defendants in the ejectment suit out of possession. In view of this we venture these additional observations : The record shows that Rains and Dollarhide gave McClurg a writing, signed by both of them, stating that McClurg had recovered two judgments, one against them and the other against Dollarhide and Fisher for the possession of the lands described in the judgments. This agreement then goes on to say, "Rains does hereby, and with the consent of Dollarhide, deliver possession of all of said lands to McClurg." If this agreement relates to the judgment in the ejectment suit of which we have been speaking, then it accounts for the fact that a writ of possession was not sued out. It settles the question of adverse possession and shows that Rains thereafter held under and not adverse to McClurg. The dates in the agreement do not correspond with the date of the judgment in question, but the evidence of Mr. Johnson, who represented McClurg, tends to show that the agreement had reference to the very lands in dispute, and whether it does relate to the judgment in question can be shown by the evidence hereafter offered. But even if it does not relate to that ejectment judgment, still there is much evidence, when taken in connection with the fact that Dollarhide and Rains voluntarily dismissed their appeal, tending to show that they abandoned all claims to the land, and that thereafter Rains held possession under McClurg and the Mabary heirs. If they by parol or otherwise consented to abide the judgment for possession, the resultant effect is the same as if Rains had been turned out by a writ and then became the tenant of McClurg. His possession would then no longer be that of Dollarhide but that of McClurg and those deriving title through him.

It is unnecessary to consider the other instructions in detail. The judgment is reversed and the cause remanded for new trial. SHERWOOD, J., absent ; the other judges concur.