[Filed December 10, 1889.]

# EMMA ANDERSON, APPELLANT, v. S. J. McCORMICK, ET AL., RESPONDENTS.

VENDOR AND VENDEE—STATUTE OF LIMITATIONS—ADVERSE POSSESSION.—Where a purchaser enters into the possession of land under an executory contract, which leaves the legal title in his vendor, and contemplates a further conveyance of the complete title, such entry is in subordination to the legal title, and where one is in under the owner of the legal title, a privity exists which precludes the idea of a hostile or tortious possession that could silently ripen into an adverse possession under the statute of limitations.

ALITER.—When the vendee pays the purchase money, from that time his possession is adverse to the vendor.

ADVERSE POSSESSION.—Joy v. Stump, 14 Or. 361, approved.

PERMISSIVE OCCUPANCY—NOT HOSTILE.—A permissive occupancy of another's land is not hostile, and no difference how long continued, it must be deemed to be in subordination to the title of the true owner, and will never bar his entry.

CALLS IN A DEED—COURSES AND DISTANCES—FIXED MONUMENTS.—Courses and distances must yield to fixed monuments, and where they are inconsistent the monuments called for in the deed are paramount.

APPEAL from the circuit court for Multnomah county.

*Geo. H. Williams*, for Anderson.

*J. M. Gearin* and *R. R. Giltner*, for Bryan and McCormick.

*H. B. Nicholas*, for John Catlin.

STRAHAN, J.—This suit was commenced by Levi Anderson in his life-time to quiet title to certain parcels of land situated in Multnomah county, Oregon, and near the city of Portland. Pending the suit the plaintiff died and his executrix, Emma Anderson, claiming some interest under his will, was substituted as plaintiff and the suit was continued in her name. No question was made as to her right to be substituted or to prosecute the suit in her name as executrix. The land in controversy originally belonged to T. G. Robinson, who derived title thereto from the United States. It consists of two or three small parcels, one claimed by John Catlin, comprising about two acres, and the other small parcel claimed by Mary Bryan and Annie McCormick, as heirs-at-law of T. G. Robinson, deceased. In his life-time T. G. Robinson sold, by metes and bounds, a larger tract to one Joseph Buchtel, who conveyed to Levi Anderson, but it is conceded that deed did

not include the parcels claimed by the defendants Bryan and McCormick, and that prior to his deed to the plaintiff he had sold a part of the same tract to one McQuaid and delivered to him a deed, which is the same tract now claimed by the defendant Catlin. To properly determine the questions presented by this record it is necessary to examine, first, the plaintiff's title to the parcels claimed by Bryan and McCormick, and next his title to the tract claimed by Catlin.

1. Anderson admits he is without title to the tracts claimed by Bryan and McCormick, unless he has acquired the same by adverse possession. Counsel for plaintiff, in their brief, say: "It must be admitted that Robinson seems to have made no *deed* to these tracts; that is, none of the deeds in either the Catlin or Anderson claims of title appear to include them as written. Robinson, however, did sell this land, and he sold it to Anderson, who paid him from $210 to $240 for it." After the making of this alleged contract with Robinson, Anderson alleges that he included this land within this inclosure. It is now claimed by Anderson that the extension of this fence so as to inclose these parcels of land constituted a hostile entry as against Robinson and those claiming under him, so as to set the statute of limitations running against their claim, and that such occupancy for the requisite period barred their right of entry. There are two objections to this claim—one of law and one of fact. These will be separately examined. And first as to the question of law.

This arises out of the plaintiff's statement to the effect that he bargained for these parcels of land with Robinson and paid him $210 to $240 therefor in "driblets," but never received any deed therefor. Waiving all question that might arise out of the statute of frauds and conceding that this is such a contract as might, under proper circumstances, be specifically enforced in equity, is an entry under it sufficient to set the statute of limitations in motion from the date of such entry? I think not. The rule seems to be that where a purchaser enters into possession

of land under an executory contract which leaves the legal title in his vendor, and contemplates a further conveyance of the complete title, his entry will be in subordination to the legal title; and in such case, as also in the case of lessee and other similar cases, where one is under the owner of the legal title, a privity exists which precludes the idea of a hostile or tortious possession that could silently ripen into an adverse possession under the statute of limitations.    *Core* v. *Faupel*, 24 West Va. 238; *Jackson* v. *Spear*, 7 Wend. 401; *Williams* v. *Snidow*, 4 Leigh. 14; *Gay* v. *Moffit*, 2 Bib. 506; *Keys* v. *Mason*, 44 Tex. 140; *Pratt* v. *Caufield*, 67 Mo. 50.    But where the vendee has executed his part of the agreement by the payment of the purchase money, his possession is from that time adverse to the vendor.    Am. & Eng. Ency. of L., Vol. 1, p. 230, where the leading cases on the subject are collated with rare discrimination and learning.    This statement of the law renders it necessary to inquire into the fact of payment.    On that subject Mr. Anderson testified as follows:    "There was no purchase price agreed on between me and Robinson.    He told me what he would take for his interest in it, and that he never would call on me for more than a pocket piece at a time.    I finished paying for it just before he died, in "driblets."    On the same subject, on his cross-examination, he said: After his (Robinson's) death I made out a statement against his estate to the amount of $210 to $240— cannot now recall which.    I had that account presented by Col. Chapman to McCormick, the administrator.    Col. Chapman said the administrator allowed the account, but I never got deed or coin.    There was no license about it.    I bought it.    There was a purchase price agreed on between me and Robinson.    He told me what he would take for his interest in it, and that he would never call on me for more than a pocket piece at a time.    I finished paying it just before he died, in " driblets."

The plaintiff's entire statement, taken together, leaves the fact of payment in such a state of doubt and uncertainty that we are unable to find it from his evidence.    If

this amount of $210 to $240 was delivered by Anderson to Robinson in "driblets," in payment for these strips of land now in controversy, why did he make out a claim for the same against Robinson's estate after his death, and cause it to be allowed by his administrator? Such act was utterly inconsistent with the idea of payment. The claim was for money due from Robinson's estate. It was made and exhibited to Robinson's administrator not long after the transaction between the parties, before Anderson's memory had become dimmed by time or weakened by age or disease, and as between the two conflicting and irreconcilable statements, that one must be accepted as true which seems the more reasonable and the best supported by corroborating evidence. When Anderson made a claim against Robinson's estate for this money, it must be taken as a conclusive admission on his part that such money had been delivered to Robinson, not in payment of a debt for land, but upon some other account or transaction upon which Anderson was entitled to its repayment. The fact of payment for this land not being satisfactorily proven, the statute of limitations was never set in motion against Robinson, or those in privity with him, and his claim of title from that source must fail. This view of the law and facts disposes of the plaintiff's claim to the parcels of land claimed by Mary Bryan and Annie McCormick.

2.   His claim to the other parcel, as against the defendant Catlin, remains to be examined. The argument of Anderson's counsel in this court has proceeded upon the theory that Anderson's paper title does not include the Catlin tract. An inspection of Anderson's deeds, without the aid of other evidence, to apply the particular description to the land designed to be conveyed, would leave the question so uncertain that the court would be unable to deduce any conclusion from the same; but when read in the light of the accompanying evidence of the surveyors, we think it safe to say that Anderson's paper title does not include this tract, and his counsel expressly admits it upon the trial. It only remains, then, to ascertain from the

evidence whether or not Anderson has acquired title to the tract by adverse possession. In *Joy* v. *Stump*, 14 Or. 361, following the current of judicial authority, this court said: "It is equally well settled that when a person relies upon naked possession as the foundation of adverse claim, there must be an actual occupancy, and the possession cannot be expended by construction beyond the limits of the actual occupation, and such possession must not only be actual, but also visible, continuous, notorious, distinct and hostile, and of such a character as to indicate exclusive ownership in the occupant." The only possession which plaintiff claims he had of this parcel of land was by having it enclosed with a fence. How much of that fence was built by Anderson does not clearly appear from the evidence; but it does appear that a very considerable portion of it was built and owned by other persons, and that Anderson was permitted by them to connect his fence with theirs, and in this manner the land in controversy was enclosed. Anderson thus enclosed his own land, the Catlin tract and one or two other small tracts, which Anderson did not own or claim, but simply included them because it could be done with less fencing than by leaving them outside of his enclosure. I am not satisfied with a fence built as this was, enclosing another's land, is that kind of hostile possession which is necessary to set the statute in motion. It looks too much like a permissive possession as a mere matter of neighborhood convenience. If this was its original character, as I am inclined to think it was, then there is nothing to change its character or convert it into a hostile occupancy. But, however this may be, I think it certain, from the evidence, that Anderson never claimed this tract until a short time before this suit was brought. He then seems to have conceived the idea that on account of some supposed defect in the deeds through which Catlin deraigns title that the lines did not close, and that therefore those deeds conveyed no title, and for the first time he commenced denying the title of those claiming under the deeds, but set up no title in himself. Anderson was

present when Burrage surveyed the tract he bought of Robinson, and he thus knew where his lines were, and it must be evident, I think, that he did not then claim any land outside of his exterior lines. He prevented one of his tenants from making improvements outside of this line, for the reason the same was not his land. He did not pay the taxes on this tract, but allowed the defendant's predecessors in interest to do that. He took a deed from one of his grantors, expressly referring to the Catlin tract as follows: "Commencing at the southwest corner of a certain piece of land sold by the parties, Thomas G. Robinson and B. F. Robinson, to one Peter McQuade; running thence south sixty-five degrees, west three chains and twenty links; thence north three chains fifteen links; thence north sixty-five degrees, east three chains and twenty links, to said McQuade's line." Nor am I able to find from Anderson's evidence that he, at any time, claimed this tract of land, or thought that he owned it. Under these circumstances his occupany, such as it was, was not hostile to the true owner, but was permissive. In such case, no difference how long such occupancy may continue, it must be deemed to be in subordination to the title of the true owner, and will never bar his entry.

3. But it is said that the calls in Catlin's deeds are defective, and taken literally the lines will not enclose his tract, or, in fact, any tract. That difficulty arises out of the fact that one of the courses is in the wrong direction, but it calls for a stake, which must be regarded as a fixed monument, and in such case courses and distances both yield to monuments. Hill's Code, § 855. All that is necessary to ascertain the precise location of the Catlin tracts is to identify the monuments called for in the deed, and when such monuments are ascertained they are paramount. But having reached the conclusion that the plaintiff has no interest in the Catlin tract, he cannot be heard to raise any question as to any supposed defect in Catlin's deeds. There was an attempt to reform them in the court below, but this is deemed unnecessary for the reasons

already indicated. In the view suggested, it simply raises a question of boundary between Catlin and Bryan and Mc-Cormick, which is reserved from the effect of this adjudication.

The Anderson claim being disposed of, no doubt Catlin and McCormick and Bryan will be able to adjust their lines in the manner already suggested in this opinion without further controversy. In any event, I do not feel satisfied that there is enough before the court to enable us to do it in this suit.

So much of said decree as finds that the plaintiff is entitled to no relief as against either of the defendants, and defining plaintiff's interest, is affirmed; but that portion of the decree reforming Catlin's deed and defining the interest of the defendants, as between themselves, is reversed; and that part of the case is dismissed without prejudice.