Argued June 6, decided June 11, 1912.

## PUTNAM v. RAY.

[124 Pac. 205.]

ADVERSE POSSESSION—NATURE OF POSSESSION—INITIATION.

Where plaintiff's predecessor in title took possession of certain land in controversy under an agreement with defendants' ancestor that the latter might include the land which was a part of his donation claim in his inclosure at any subsequent time, and plaintiff's grantor did not include the land in his conveyance, and nothing was done to improve the same, there was no adverse possession.

From Polk: WILLIAM GALLOWAY, Judge.

This is a suit by John H. Putnam against Elias D. Ray, J. H. Ray, W. H. Ray and Sarah Doty to establish title to real property by adverse possession. From a decree in favor of plaintiff, defendants appeal. Reversed and decree rendered in favor of defendants.

REVERSED.

For appellants there was a brief over the names of *Mr. Willis E. Vincent, Mr. Walter C. Winslow* and *Mr. Roy F. Shields,* with oral arguments by *Mr. Winslow* and *Mr. Shields.*

For respondents there was a brief over the names of *Mr. Oscar Hayter* and *Mr. George G. Bingham,* with an oral argument by *Mr. Bingham.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The facts in this case are practically undisputed, and we find them to be as follows: In 1854 Robert A. Ray was the owner of a donation land claim in Polk County. Adjoining him on the north and west, so far as we can ascertain from the imperfect map submitted in evidence, was the donation claim of one Gibson, which was fenced. In 1854 or 1855 Ray began fencing his claim; but at a point in the northwest corner there was a jog into the Gibson claim, which included a rectangular strip of twenty acres, which is the land in dispute. To inclose

this with Ray's other land would have required an addi-
tional number of rails and further labor, so it was agreed
that Ray might run his fence straight across, so as to
connect with other fences, the effect of which would be to
leave this twenty-acre tract inclosed in Gibson's pasture,
with the understanding that Ray might fence that tract
according to his lines later. The land was timbered,
brushy, and rough, and of little value until recently. Later
Gibson sold his land to one Lucas, not describing nor
including the twenty-acre tract in question, in the con-
veyance, and in 1874 Lucas conveyed the premises to
Putnam, the father of plaintiff, who died in 1893. Plain-
tiff purchased the interests of the other heirs, and is now
the owner of the whole of his father's interest in the
property. When Putnam purchased from Lucas, he was
shown what was represented to him to be the exterior
line of the Gibson claim, including the land in dispute.
The fence, until recently, remained in the same position
that it was in when built, and, when rails became rotten,
trees were felled along the line to prevent the ingress of
stock, until it became more of a brush fence than a line
fence. The land was never improved, and nothing was
done upon it except the cutting of a load or two of wood
until within the last three or four years, since which time
a considerable quantity of cordwood has been removed
from it. The tract is remote from the public road, and
the cutting of wood by plaintiff's ancestor was not suffi-
cient in quantity to attract attention.

Defendants, who are the heirs of Ray, have always
paid the taxes on the Ray place, including the twenty
acres in dispute. Plaintiff has paid taxes on the land
conveyed to his ancestor by Lucas, probably supposing
this twenty acres to be a part of the claim, and included
therein, though not described in the Lucas deed. About
the time plaintiff began cutting cordwood on the land,

defendants asserted title, and plaintiff began this suit to quiet the same, asserting title in himself by reason of adverse possession of himself and his predecessor in interest since 1874. The original possession by Gibson having been permissive, and no conveyance having been made by him to plaintiff's predecessor in interest, there could be no ouster and no adverse possession. Adverse possession must be originated by disseisin, and it must be hostile, open, and notorious. It must be hostile in its origin and hostile in its continuance: *Sommer* v. *Compton,* 52 Or. 173 (96 Pac. 124, 1065). There was nothing to indicate to the Rays that Gibson or Lucas or Putnam intended to claim the land in dispute or depart from the original agreement in regard to its occupation. It.was not included in Gibson's deed nor in the deed of Lucas to plaintiff's ancestor. If Lucas had given Putnam a warranty deed to the premises, and he had entered under it, such conveyance and entry might have conveyed such notice to defendants of an adverse claim as would have set the statute in motion; but this he failed to do. The omission of any reference to this tract in all the conveyances is in itself evidence that the grantors did not believe they owned it, and did not intend to claim title.

In view of the fact that the original use of the land by Gibson was permissive, there has been no such unequivocal act, evidencing an intent to claim the land otherwise, as is required to constitute the basis of a hostile claim: *Springer* v. *Young,* 14 Or. 285 (12 Pac. 400) ; *Curtis* v. *La Grande Water Co.,* 20 Or. 34 (23 Pac. 808: 25 Pac. 378: 10 L. R. A. 484) ; *Anderson* v. *McCormick,* 18 Or. 301 (22 Pac. 1062).

The decree will be reversed, and one entered here in favor of defendants.                    REVERSED.