Argued and submitted December 2, 1982, affirmed August 28, 1984

OWENS et al,
*Petitioners on Review,*

*v.*

BARTRUFF et al,
*Respondents on Review.*

(TC 79-11-133; CA A20622; SC 28929)

687 P2d 1072

A. Gregory McKenzie, Oregon City, argued the cause for respondents on review. James C. Tait and Canning, Tait and McKenzie, P.C., Oregon City, filed the briefs.

Gerald R. Pullen, Portland, argued the cause for petitioners on review and filed the brief in the Court of Appeals.

Before Lent, Chief Justice**, and Linde, Peterson***, Campbell, Roberts and Carson, Justices.

CARSON, J.

Campbell, J., dissenting.

---

** Chief Justice when this case was argued.

*** Chief Justice when this decision was rendered.

## CARSON, J.

This declaratory judgment proceeding presents the question whether a vendee in an executory land sale contract may adversely possess other land owned by a vendor which land is contiguous to the land entered and possessed pursuant to the contract. We answer the question in the affirmative.

In 1961, plaintiffs sold by contract lots 6 and 7, in block 8, Cedar Fir Park, in the community of Zig Zag, to defendants' predecessor in interest, the mother of defendant Merrill Bartruff. The lots sold abut the south side of U.S. Highway 26. The contiguous land in question is described as lots 8, 9 and 10 in the same block and is a second tier of lots situated immediately south of the lots sold by contract. The focal point of the sale was the Zig Zag Inn, which originally was situated entirely on lots 6 and 7. Sometime before the 1961 sale, in conjunction with the widening of Highway 26, the Inn was moved back from the highway and the main building since then has encroached upon lots 8 and 9 by about 33 feet.

Although the contract provided for the sale of only lots 6 and 7, the vendees from the outset believed that they had purchased all five lots. Since at least 1961, a septic tank serving the Inn has been located on lot 9, and a propane tank and the septic tank drainfield, both of which serve the Inn, have been located on lot 8. A garage, originally used by defendants' predecessor for storage and now connected to the Inn by a covered walkway, has been located on lots 8 and 9. A cabin located on lot 10 was used from 1961 by defendants and their predecessor as a dwelling, a rental unit, and for storage until it was razed in 1974. In 1963, defendants' predecessor permitted an employee to place a $10' \times 50'$ house trailer on lots 8 and 9. Defendants later purchased the trailer and removed it in 1968. Defendants permitted an A-frame building to be constructed in 1969 on lots 6 and 10 for use by a local real estate salesperson. The structure was later purchased by defendants. In 1977, defendants placed a $24' \times 60'$ mobile home on lots 8 and 9, surrounded by a 12' wide deck. It is defendants' present residence. Defendants cleared and landscaped parts of lots 8, 9 and 10 and maintained them. Defendants' children have used these lots as a playground. Defendants or their predecessor have paid the property taxes on the five lots since 1961.

In 1972, defendants purchased the interest in the property from their predecessor in interest and received an assignment of the original contract of sale. In 1977, defendants completed payment under the original contract to plaintiffs. Plaintiffs then executed and delivered a deed to the property to defendants pursuant to the contract. In 1978, defendants' attorney discovered that lots 8, 9 and 10 were not included in the contract or the deed. He attempted to secure plaintiffs' signatures on a new deed which included lots 8, 9 and 10. Plaintiffs are husband and wife and held the property as tenants by the entirety. Husband executed the new deed, apparently believing the deed was merely a duplicate to replace a lost original. Wife refused to sign.

In 1979, plaintiffs brought this action for a declaration that they were the owners of lots 8, 9 and 10. Defendants counterclaimed, alleging that they owned the property by adverse possession. The trial court originally found a mutual mistake by the parties as to the property sold which entitled defendants to a deed reformation, but plaintiffs successfully argued that reformation could not be awarded because it had not been pleaded. The trial court then limited defendants to their claim of title by adverse possession and, except for those parts encroached upon by the Zig Zag Inn building, declared plaintiffs owners of lots 8, 9 and 10. The Court of Appeals concluded that defendants had established ownership of the entirety of lots 8, 9 and 10 by adverse possession and reversed.

Plaintiffs petitioned this court to review the Court of Appeals' decision and to reverse the holding of that court either as a matter of law or as a matter of fact. Plaintiffs contend that the Court of Appeals ignored a longstanding Oregon rule of property law that a vendee who enters into possession of land under an executory contract takes possession in subordination to the legal title of the vendor. Hence, this means of entry onto the land will prevent adverse possession by the vendee against the vendor until the contract is performed.

A nineteenth century Oregon case dealt with facts quite similar to the instant action. *Anderson v. McCormick,* 18 Or 301, 22 P 1062 (1889).[1] Therein, the vendee claimed

---

[1] *Anderson v. McCormick,* 18 Or 301, 22 P 1062 (1889), involved two sets of facts. We are concerned with the analysis relative to the parcel inherited by Bryan and

adverse possession against the alleged vendor of a parcel of land contiguous to the tract allegedly sold. The vendor's successors prevailed. The court stated:

> "The rule seems to be that where a purchaser enters into possession of land under an executory contract which leaves the legal title in his vendor, and contemplates a further conveyance of the complete title, his entry will be in subordination to the legal title; and in such case, as also in the case of lessee and other similar cases, where one is under the owner of the legal title, a privity exists which precludes the idea of a hostile or tortious possession that could silently ripen into an adverse possession under the statute of limitations. [Citations omitted].[2] But where the vendee has executed his part of the agreement by the payment of the purchase money, his possession is from that time adverse to the vendor." 18 Or at 303.

This general rule is a valid one. It is supported by cases too numerous to mention and a rationale which is self-evident: A vendor would have no remedy against a vendee who refused to continue contract payments after the vendee had possessed the land for 10 years[3] were it not for the rule. The defect in the court's reasoning in *Anderson* is that it applies the rule to a situation different from that which the rule was designed to meet. Possession by the vendee of the land sold is not hostile to the title of the vendor, but subordinate to it. However, the hostile nature of possession of other land owned by the vendor, which is not included in the sale, is not diminished by

---

McCormick, and not with the parcel conveyed to Catlin, which does not present the same issue as the instant case.

[2] *Anderson* cited *Gay v. Moffitt,* 5 Ky (2 Bibb) 506 (1812); *Pratt v. Canfield,* 67 Mo 50 (1877); *Jackson v. Spear,* 7 Wend (NY) 401 (1831); *Keys v. Mason,* 44 Tex 140 (1875); *Williams v. Snidow,* 31 Va (4 Leigh) 14 (1832); *Core v. Faupel,* 24 W Va 238 (1884); Am & Eng Ency of L, Vol I, p 230 (1887). These cases support the general rule stated, but they are factually dissimilar from *Anderson* and the instant action in that they do not involve a separate parcel of land contiguous to the parcel sold. They, and many other cases before and since, discuss a single parcel occupied pursuant to a contract in dispute between the vendor and the vendee or successors to the vendee.

[3] ORS 12.050 provides:

"An action for the recovery of real property, or for the recovery of the possession thereof, shall be commenced within 10 years. No action shall be maintained for such recovery unless it appear [sic] that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within 10 years before the commencement of the action."

the mere fact that it is the vendor who owns it.[4] This principle is most demonstrable where the two parcels in common ownership have no geographical relationship to each other, but is equally true where the two parcels are contiguous.[5] Application of the general rule to a parcel of land not included in the contract sale (as was done in *Anderson*) henceforth must be disfavored.

We have determined that the better rule for this narrow specie of cases is that the vendee may adversely possess a parcel of the vendor's land not included in the contract of sale nor conveyed by a subsequent deed.

Plaintiffs contend that the contract did not cover the second tier of lots (lots 8, 9 and 10), but assert that defendants should be precluded from claiming hostile possession of the second tier during the time before the deed to the first tier of lots (6 and 7) was executed in 1977 because defendants pleaded that they possessed the property "under a claim of right of contract." Thus plaintiffs' assertion is that the contract did not include the second tier of lots, but because defendants believed that it did, defendants' possession was in subordination to plaintiffs' title. This "heads-I-win; tails-you-lose" concept has been answered by the Illinois Supreme Court:

---

[4] This statement is not in conflict with *Scott v. Elliott,* 253 Or 168, 451 P2d 474 (1969), as was argued by plaintiffs. *Scott* determined that a possessor of land, who had entered parcel A by permission of its owner, could not adversely possess parcel B, a contiguous piece of land, against the same owner. The court held that the permissive character of the use spread just as the use spread to the contiguous parcel. Permissive use is distinct from possession pursuant to an executory contract in this context. Contractual possession of a specified parcel of land does not "spread" to adjoining land by the use of that land. *Scott* does not support the proposition that use of land adjoining a contractually identified parcel of property is subordinate to the ownership of the contract vendor. The question in the instant case is whether possession of one tract of land under an executory contract affects the hostility or adverseness of possession of a contiguous tract owned by vendor. *Scott* is inapposite.

In the instant case, there was no evidence that defendants' possession of lots 6 and 7 or their possession of lots 8, 9 and 10 was permissive in the sense that word is used in *Scott.*

[5] For example, if A, owner of two non-contiguous parcels of land, Blackacre and Whiteacre, sold Blackacre to B, and B possessed Whiteacre adversely, there is nothing inherent in the vendor-vendee relationship which would affect B's adverse possession of Whiteacre against A. We discern no distinction where the two parcels involved are contiguous.

"If [vendee's] entry upon the portion of the lot in dispute was authorized by his contract of purchase, then the subsequent conveyance to him, which related back to that contract and vested the legal title thereby bargained for, is a complete defense to [vendor's successor's] claim; and, on the other hand, if his entry was not authorized by that contract, it could not have been under it, and so the possession was, from the outset, adverse to [vendor] and those claiming under him, and being open and notorious for twenty years and more, it is equally a complete defense to [vendor's successor's] claim." *Schneider v. Botsch,* 90 Ill 577, 580 (1878).

■　In *Schneider v. Botsch,* 90 Ill 577 (1878), the vendee, in 1846, purchased a lot from the vendor and entered into possession of the lot under contract and also entered into possession of an adjoining strip of land owned by the vendor. Neither the contract of sale nor the deed which vendee eventually received included the strip. In 1868, suit was filed. The statute of limitations for the recovery of property in Illinois at the time was 20 years. The vendor's successor claimed that while vendee's possession of the lot was under the contract of sale vendee could not adversely possess the strip. The court disagreed and held that the vendee was entitled to ownership of the strip. In the instant case, the adverseness of defendants' possession of lots 8, 9 and 10 should be measured from the date their predecessor first took possession of the disputed property, not from the date of final payment under the contract nor from the date of the deed.[6]

■　Setting the date from which adverse possession may run does not alone prove that defendants' possession was adverse or hostile, but we, as did the Court of Appeals, conclude that it was. We previously have held that "possession under a mistaken belief of ownership satisfies the element of hostility or adverseness in the application of the

---

[6] This may be contrasted with a case which is factually similar to *Anderson* and the instant case except for one important fact. In *West v. Edwards,* 41 Or 609, 69 P 99 (1902), the contract of sale included the disputed tract, and the deed did not. Therefore, the vendee's entry and possession of the disputed tract was pursuant to the contract, and thus subordinate to the vendor's title. We therefore correctly determined that the vendee's adverse possession against the vendor did not begin to run until after payment of the full contract price. In *West,* there existed a vendor-vendee relationship in regard to the disputed tract. So long as that relationship continued as to the disputed tract, the vendee's possession was not adverse. In the instant case, the disputed lots were not included in the contract and the converse result obtains.

doctrine of adverse possession." *Norgard v. Busher,* 220 Or 297, 303, 349 P2d 490 (1960). The trial court found that defendants had entered onto and possessed lots 8, 9 and 10 erroneously believing that they "owned" them.[7] Acknowledging that *Norgard v. Busher, supra,* is a deed case, we see no reason not to apply the same rationale to the case involving a contract. The reasoning in *Norgard* distinguished a "pure mistake" over the extent of land conveyed from a "conscious doubt" as to the extent of the adverse possessor's holdings. Where the party asserting adverse possession only intended to possess that to which he was entitled pursuant to the deed, his "conscious doubt" would defeat the hostility element of his adverse possession claim. However, where the adverse possessor was mistaken as to the extent of his holdings, but possessed land not included in the deed nonetheless, his possession was hostile. This reasoning effectively eliminated the need for examination of the possessor's intent in cases of "pure mistake."

This reasoning applies with equal force where the possessor mistakenly believes that he has the contractual right to possess the disputed land. Where the possessor only intended to possess the land he was contractually allowed to possess but inadvertently possessed land not included in the contract, his "conscious doubt" about his right to possession precludes hostility. But where the possession is pursuant to a "pure mistake," the possession is sufficiently hostile to the record owner's title. Thus, possession under a mistaken belief of a contractual right to possess satisfies the element of hostility under the doctrine of adverse possession.

We hold that defendants' possession of lots 8, 9 and 10 was adverse or hostile to plaintiffs' title from the date that their predecessor first took possession in 1961, and continuing until the date this suit was filed in 1979.

Yet, adverse or hostile possession alone is not sufficient to establish title by adverse possession:

"Title by adverse possession is acquired by the open, notorious, exclusive and uninterrupted antagonistic possession under a claim of ownership of land belonging to another

---

[7] The trial court used the word "owned." More accurately, the trial court should have expressed the mistaken belief on the part of defendants as possessing the lots in question under a mistaken belief that the lots were included in the contract.

618

for the full period of ten years, by a person whose claim of ownership would not be in violation of some contractual duty owing by him to the owner of the land, such as a tenant holding under a lease or the like." *Bessler v. Powder River Gold Dredg. Co.,* 95 Or 271, 282, 185 P 753, 187 P 621 (1920).

"Claim of ownership" is defined as "nothing more than the intention of the disseisor to appropriate and use the land to the exclusion of all others, irrespective of any semblance or shadow of actual title or right * * *." 95 Or at 279. We find that defendants' possession was under such a claim of ownership,[8] and that this claim was neither in violation nor inconsistent with the contractual obligation of defendants to pay plaintiffs for lots 6 and 7 before receiving title to them.

The record indicates that defendants and their predecessor have been in continuous, uninterrupted possession of lots 8, 9 and 10 since 1961. The element of open and notorious possession relates to notice to the record owner. Where the owner sells a part of a tract but retains another part of the same tract, and the vendee clears, makes improvements to and resides upon the part retained by the owner, such use constitutes notice to the record owner that the possession is adverse to the owner's interest in the land. The owner is charged with exercising due diligence in discovering such acts and improvements. In the instant case, a mere visit to the property would have demonstrated to plaintiffs that defendants possessed the lots openly and notoriously.

The record is devoid of evidence that any person other than defendants or their predecessor have occupied this land since 1961, except for defendants' renter. Defendants' possession was therefore exclusive. Such exclusive possession is not defeated by entry onto the land by renter. We treat the renter's possession as derived from and attributable to defendants. *See Quinn v. Willamette Pulp & Paper Co.,* 62 Or 549, 553, 126 P 1 (1912). In Oregon, "possession need not be absolutely exclusive, if it is of the kind to be expected of an owner under the circumstances." *Grimstad v. Dordan,* 256 Or 135, 141, 471 P2d 778 (1970). Renting space for a house trailer

---

[8] Although it is not a listed factor, the payment of taxes assessed to lots 8, 9 and 1 by defendants is a consideration which favors our determination that defendants possessed the lots under a claim of ownership. *See Knecht v. Spake,* 218 Or 601, 611, 346 P2d 98 (1959).

to an employee could be expected of the owner in the circumstances and thus does not defeat the exclusivity of defendants' possession.

Trying the case anew upon the record, we conclude, as did the Court of Appeals, that defendants' possession of the entirety of lots 8, 9 and 10 was open, notorious, exclusive, uninterrupted, adverse or hostile, and under a claim of ownership for a period longer than 10 years. Defendants have therefore established title by adverse possession to lots 8, 9 and 10.

The decision of the Court of Appeals is affirmed.

**CAMPBELL, J.,** dissenting.

The key to this case has to be the intent of the defendants-purchasers. It is evident that they believed from the outset that they *were purchasing* all five lots. This means that until 1977, when they paid the balance of the purchase price in full, they recognized the legal title of the plaintiffs-sellers to the three southern lots that were not included in the contract of sale. Therefore the defendants-purchasers could not hold adversely to the plaintiff sellers until the contract balance was paid.

*Norgard v. Busher,* 220 Or 297, 303, 349 P2d 490 (1960), is distinguishable. It holds "that possession under a mistaken belief of ownership satisfies the element of hostility or adverseness in the application of the doctrine of adverse possession." There the mistaken belief of the ownership was under a deed. Here the defendants-purchasers' mistaken belief was under an executory contract.

The majority relies on *Schneider v. Botsch,* 90 Ill 577 (1878). In my opinion the reasoning in that case could be used to set up a form of estoppel against plaintiffs-sellers, but not to support an adverse possession claim. I think that the defendants-purchasers' remedy was estoppel or reformation.