JOHN P. MILLER v. REBECCA BECK AND FRANCIS FELL-
MAN.

*Ejectment—Pleading—General issue—Adverse possession—Charge
to jury.*

1. In an action of ejectment, title by adverse possession may be
   shown by the defendant under a plea of the general issue.
2. A circuit judge has a right to presume that an ordinary jury has
   ordinary intelligence, and that the word "adverse," in *itself,*
   means "hostile and distinct," when applied to qualify or
   define a possession of lands.

Ejectment. Plaintiff brings error. Affirmed and record
remanded, etc. The facts are stated in the opinion.

Error to Ingham. (Gridley, J.) Argued November 9,
1887. Decided January 5, 1888.

*H. B. Carpenter,* for appellant.

*Frank L. Dodge,* for defendants.

MORSE, J. This is an action of ejectment to recover pos-
session of a strip of land in the city of Lansing, a few inches
wide, upon which rests the outer and rear wall of a brick
store owned by the defendant Rebecca Beck.

Samuel Beck purchased in 1869 a parcel of land off the
north end of lot six, block 100, in the city of Lansing, 20
feet north and south by 66 feet east and west. This is now
the property of Rebecca, his widow. When Samuel bought
the land there was a wooden building upon it, which was
burned in August, 1870 or 1871. The year it was burned,
Samuel Beck erected a three-story brick building, 20 feet
wide by 60 feet long. The six feet remaining at the rear
was excavated, and used as an area to give light to the cellar.

A wall was built around this area. The brick building so erected by Samuel Beck was burned in 1885, and in the spring of that year a two-story brick building was erected on the site of the former store, but it was built six feet longer, thus occupying the space before used for an area.

Plaintiff owns a parcel of land next south and adjoining the Beck lot, and also owns 22 feet further east, and also a lot 20x22 feet east of the Beck store. He claims that the rear or east wall of the defendant's store was placed in part, by mistake, upon his land to the extent of from three and one-half to five inches. On the ninth day of September, 1886, he brought this suit.

The defendants claim that the rear or east wall of the brick store does not encroach upon the land of plaintiff, but that, if it does, the few inches of land in dispute have been occupied adversely by Samuel Beck and his grantee, the defendant Rebecca Beck, for a sufficient length of time to bar the plaintiff's rights therein. The testimony shows that this rear wall was built exactly in the same place occupied by the old wall of the area. Louis Beck, son of Samuel and Rebecca, testified that he thought the first brick store and the area wall was built in the fall of 1870, but was not sure but it might have been in 1871. No other testimony appears as to the time it was built.

It seems to be undisputed that from the time the area wall was built the land occupied by it was held and claimed by the Becks, and occupied by them without interruption until the commencement of this suit.

The jury found a verdict for the defendants.

The only errors assigned are directed against the charge of the court. It is submitted that the court erred in permitting the jury to find title in the defendant by adverse user and possession—

1. Because the statute of limitations relied upon was not pleaded.

2. Because it was not certain from the testimony of Louis Beck when the occupation began. If it was in 1871, the 15 years of the statute had not expired when this suit was brought.

Neither of these objections is tenable. A plea of the general issue is sufficient, in an action of ejectment, to admit, without notice, the defense of title by adverse possession. Tyler, Ej. 463, 464; How. Stat. §§ 7808, 7809; *Hughes v. Graves,* 39 Vt. 358; 3 Washb. Real Prop. 163, 164; *Nelson v. Broadhack,* 44 Mo. 596; *Dalby v. Snuffer,* 57 Id. 294; *Wood v. Jackson,* 8 Wend. 9; *Howard v. Mitchell,* 14 Mass. 243. It was for the jury to determine from Louis Beck's testimony when the adverse possession began.

It is also argued by the plaintiff's counsel that the circuit judge should have defined more clearly to the jury the meaning of the term "adverse," as applied to defendants' possession. He insists that the average juryman is entirely unacquainted with the legal meaning and import of the word.

It does not appear from the record that the counsel requested the court to define or declare the meaning of adverse possession any more fully or specifically than he did. Nor does it seem to us that the jury could have been misled by the instructions of the court. It was very apparent and clear from the testimony that the possession of the Becks included all the legal elements of an adverse holding, and the only question to be decided by the jury was the length of time such holding had existed before suit.

The circuit judge instructed the jury more than once that the premises must have been occupied by the Becks for the space of 15 years by an open and notorious possession,—one that was adverse to the plaintiff,—in order to bar the recovery of the plaintiff. There was no dispute about the continuity of the possession of the Becks, and the only fault the plaintiff's counsel can find with this charge of the court is that he did not tell them that this possession, in order to be

adverse, must have been distinct and hostile to the rights of the plaintiff in the land.

The circuit judge had a right to presume, we think, that an ordinary jury has ordinary intelligence, and that the word "adverse," in itself, means "hostile and distinct," when applied to qualify or define a possession of lands. At any rate, the evidence is undisputed that this possession was held under a claim of right, and that it was open, notorious, continued, distinct, and hostile, and the verdict of the jury was right as to the character of the possession. If the attention of the court had been called to this matter, he would, without doubt, have clearly specified and set forth all the distinctive elements needed to establish an adverse possession; but, under the proofs, his failure to do so could have resulted in no possible harm to plaintiff.

The judgment is therefore affirmed, with costs. The record will be remanded for further proceedings under the statute if desired.

SHERWOOD, C. J., and CHAMPLIN, J., concurred. CAMPBELL, J., did not sit.