Argued November 1, decided November 28, 1911.

# STEPHENSON v. VAN BLOKLAND.

[118 Pac. 1026.]

LIMITATION OF ACTIONS—COMPUTATION OF PERIOD—ACCRUAL OF CAUSE OF ACTION.

1. The statute of limitations does not commence to run until a cause of action accrues.

ADVERSE POSSESSION—HOSTILE CHARACTER—RECOGNITION OF BETTER TITLE.

2. Plaintiff in a suit to quiet title had entered into possession of State land in 1882 under an executory contract of purchase and thereafter in no way notified the State that he claimed the land in hostility to its title, and held the land under the contract and a certificate of sale until 1898, doing no overt act which would give constructive notice of a hostile possession. In 1898 he abandoned his right to purchase and allowed the cancellation of his certificate, and made no claim of ownership except in subordination to the title of the State. *Held*, that his possession was not hostile, nor under claim of ownership, and hence was not adverse possession.

DEEDS—PRESUMPTION—DELIVERY.

3. The presumption of the delivery of a deed to the State arising from the record of the deed is not overcome by the fact that the clerk of the State Land Board did not at one time have such land listed, and did not know that it had been deeded to the State and duly recorded, in the absence of any testimony that the officers of the State did not have full cognizance of the deed at the time of its execution and thereafter, and in the absence of proof tending to show that there had been no delivery of the deed.

EVIDENCE—FRAUDS, STATUTE OF—ADMISSIONS BY GRANTOR AGAINST INTEREST.

4. Parol declaration of the clerk of a State Land Board that the State had no right to convey certain land is a declaration against the interest of the State as the owner of the record title, and under the statute of frauds is inadmissible to defeat such title.

EVIDENCE—PRESUMPTIONS—OFFICIAL PROCEEDINGS.

5. Under Section 799, subd. 15, L. O. L., creating the presumption that official duty has been regularly performed, it will be assumed that a deed to the State, duly recorded, was regularly accepted pursuant to law by proper authorities of the State.

ADVERSE POSSESSION—PRESCRIPTION.

6. Adverse possession of land by the State for the statutory period will give it title by prescription.

ADVERSE POSSESSION—PLEADING—ISSUES AND PROOF.

7. Where the general statute of limitations is relied upon as a defense for the purpose of showing title, and the defendant alleges ownership

and right of possession, it is not necessary to specially allege adverse possession for the statutory period, as the fact of ownership is sufficiently certain, under Section 328, L. O. L., requiring defendant's estate to be pleaded, to admit evidence of adverse possession.

ADVERSE POSSESSION—CONTINUITY—AGREEMENT TO SURRENDER.

8. An agreement to surrender before the expiration of the statutory period, based upon a valuable consideration, stops the running of the statute, and continued possession will not be considered as adverse.

ADVERSE POSSESSION—HOSTILE CLAIMS—VENDOR AND PURCHASER.

9. As between a party entering upon State lands under an executory contract of purchase and the State, the occupancy of such party under his contract for the purchase of land was that of a tenant, and did not inure to his benefit, but to the benefit of the State for the purpose of perfecting title by adverse possession.

From Union: JOHN W. KNOWLES, Judge.

Statement by MR. JUSTICE BEAN.

This is a suit by Thomas Stephenson against Andrew Van Blokland, appellant, and George H. Steel, State Treasurer, Frank W. Benson, Secretary of State, and Frank W. Benson, Governor of the State of Oregon, and as such officers constituting the State Land Board of the State of Oregon, to quiet title to the S. ½ of N. W. ¼ of section 19 in township 3 S. of range 38 E., W. M., Union County, Oregon. From a decree awarding one-half of the land to each party, defendant appeals. The plaintiff alleges that he is the owner in fee, in the possession of the land, and entitled to the possession of the same, and that defendant Van Blokland claims some interest therein adversely to plaintiff.

Defendant Van Blokland, by his answer, denies the main allegations of the complaint, and alleges that he is the owner of the land by virtue of a deed from the State of Oregon, and in possession thereof. Plaintiff replies, denying the new matter of the answer, and avers that on August 21, 1882, he went into actual possession of said premises, claiming to own the same against all the world except the State of Oregon, and so continued until the State Land Board refused to grant him title to the lands;

that since that time he has been in adverse possession of the land, and by reason thereof defendant is estopped from claiming said land under his deed from the State, and pleads title to the land by prescription. The members of the State Land Board were made parties defendant, but the complaint, on motion of plaintiff, was dismissed as to them.    MODIFIED: DECREE RENDERED.

For appellant there was a brief and an oral argument by *Mr. John S. Hodgen.*

For respondent there was a brief and an oral argument by *Mr. James D. Slater.*

MR. JUSTICE BEAN delivered the opinion of the court.

It appears from the evidence and record that on March 9, 1872, the State Land Board executed a deed to the land in question to one  C. Laxton, who on the 18th day of July, 1872, conveyed the same to E. S. and J. T. McComas. The latter, with their wives, on September 1, 1877, in consideration of $560.89, executed a deed thereof to the State of Oregon, J. T. McComas and wife acting by E. S. McComas as attorney in fact. The evidence does not disclose that any power of attorney or authority  was given to E. S. McComas to convey the interest of J. T. McComas and wife. On August 21, 1882, the State Land Board contracted to sell the land in question to the plaintiff, together with the N. ½ of the quarter section, and issued to him a certificate of sale, conditioned upon the payments for the land being made. Plaintiff made a payment of $64.58, and executed two notes, each for $64.58, payable in one and two years, respectively, for the balance of the purchase price, and, as his receipts show, paid interest on the deferred payments until September 2, 1893, when payment was discontinued. He was informed by the clerk of the State Land Board on November 14, 1898, that unless he paid

the amount then due, his certificate No. 122 would be canceled. About this time Mrs. M. R. Stephenson, the plaintiff's wife applied for the purchase of the land, and both Mr. and Mrs. Stephenson were informed by the clerk of the State Land Board that the State could not execute a deed to the S. ½ of the quarter section for the reason that the same had been conveyed to Laxton a long time before. Plaintiff requested the State Land Board to credit the amount he had paid for the S. ½ of the quarter section upon the payment of the N. ½, and informed the board that, if they would not do so, they could cancel his certificate. In his testimony, referring to his claim to the land, he said, "I threw it up." After notice had been duly given him, the State Land Board on December 27, 1898, canceled his certificate for nonpayment, notifying him to that effect, and Mrs. M. R. Stephenson applied for and purchased the N. ½ of the quarter section. It appears that plaintiff while holding this certificate of sale cut from the land large quantities of wood, about a thousand cords; built a cabin on the tract, and cultivated a garden of about one acre fenced separately. By connecting a fence with fences on adjoining lands, he inclosed the quarter section, using a portion thereof for pasture. Formerly the land was timbered, and it is now partially covered with brush, being suitable for pasture, about five acres of which is tillable. Defendant Van Blokland, in consideration of $400, purchased the land in question about Dec. 14, 1909, and obtained a deed therefor from the State on May 3, 1910, which was duly recorded in Union County on May 7, 1910. It therefore appears that the plaintiff claims title to the tract by adverse possession thereof for the statutory period; while the defendant, Van Blokland, claims title by virtue of his deed from the State of Oregon.

Plaintiff's contention is that after obtaining a certificate of sale from the State in 1882 he had been in the actual, exclusive possession of the land, claiming to own the same against all the world except the State of Oregon, until the State Land Board informed him that it could not convey the land, and plaintiff's counsel argues that the case comes within the rule announced in *Boe* v. *Arnold*, 54 Or. 52 (102 Pac. 290). In other words, it is not claimed that the statute commenced to run as against the State or its grantee until December, 1898. The plaintiff during all that time recognized the title of the State, and held possession of the premises in subordination thereto, attempting for a while to obtain title from the State. At the time of the cancellation of his entry and the purchase of the N. ½ of the quarter section by his wife, the plaintiff appears to have abandoned all claim of right to purchase from the State, and the whole matter in regard to his application to purchase from the State was at an end. In the case of *Boe* v. *Arnold* it was held that "one claiming title to land by adverse possession for the period of 10 years as against all persons, but recognizing the superior title of the United States government, and seeking in good faith to acquire that title, may assert such adverse possession as against any person claiming to be the owner under a prior grant." In that case, one Chandler, who was the predecessor in interest, and from whom defendant's lessor derainged title, filed his application for a homestead entry on the land February 18, 1893, alleging continuous settlement since 1881, and after a contest in the local land office, the decision being in favor of Chandler, final certificate was issued to him on December 26, 1904, and a patent to the premises issued to the heirs of Chandler March 6, 1906. In the case at bar, plaintiff attempts to assert adverse possession as against a subsequent grant, defendant claiming title as grantee

of the State of Oregon, and standing in the shoes of the State as to the very title to the land, which the plaintiff at all times recognized from 1882 until 1898, differing entirely from the facts in the case of *Boe* v. *Arnold.*

1. The statute of limitations does not commence to run until a cause of action accrues; and it is not claimed in this case that as against the State the possession of plaintiff was adverse, or that the statute was set in motion until December, 1898. It is conceded that the statute did not run after the passage of the act of 1903, Section 13, L. O. L. *State* v. *Warner Valley Stock Co.,* 56 Or. 283 (108 Pac. 861).

"In legal language, the intention guides the entry, and fixes its character."

*Ewing* v. *Burnet,* 36 U. S. 41, 51 (9 L. Ed. 624). It is said:

"Adverse possession may best be defined as an actual, visible, and exclusive appropriation of land, commenced and continued under a claim of right—either openly avowed or constructive, as arising from the acts and circumstances attending the appropriation—to hold the land against him who was seised. The principle upon which the statute of limitations is applied is not merely that the party pleading it has set up an adverse claim as having existed during the period specified in the statute, but that the adverse claim is accompanied by such an invasion of the rights of the opposing party as to give the latter cause of action, which, not having been prosecuted within the time limited by law, is presumed to be extinguished or surrendered." Buswell's Limitations and Adverse Possession, § 237. "Where the possession commences by the permission of the owner, there can be no disseisin or adverse possession until there has been a disclaimer by the assertion of an adverse title, and notice thereof, either actual or con-

structive." Wood, Limitation of Actions, § 256, p. 507; 1 Am. & Eng. Enc. of Law (2 ed.), 798.

2. The plaintiff entered under an executory contract of purchase, and thereafter in no way notified the State that he claimed the land in hostility to its title, and there was no overt act on his part which would amount to constructive notice thereof. In 1882 he entered and held the land under the defendant's grantor by virtue of his certificate of sale or contract to purchase until 1898. His possession appears to have been sufficient to set the statute in motion, if his possession had been hostile to the State. Since that time he has shown no different claim except that he abandoned his right to purchase, allowed the cancellation of his entry, and permitted his wife to purchase the remainder of the quarter section. Plaintiff does not show that he claimed ownership in any way since that time or before, except in subordination to the title of the State, and it is not shown that he ever asserted any title. He appears to claim some right by virtue of his contract with the State, and introduces evidence of payments thereunder. It was said by Mr. Chief Justice EAKIN in *Bayne* v. *Brown,* 60 Or. 110 (118 Pac. 282). "It is the adverse possession under a claim of ownership that establishes the title, * *" Plaintiff's possession was not hostile to the State nor under claim of ownership.

3. It is urged by counsel for plaintiff that, on account of the letter of the clerk of the State Land Board to the effect that the State could not convey the land, thereby the presumption of the delivery of the deed from E. S. McComas *et al.* to the State was contradicted. It is not shown by any testimony that the officers of the State did not have full cognizance of the deed referred to at the time of its execution and for many years thereafter. The fact that the clerk of the State Land Board at one time did not have the land in question listed, and

did not know that the same had been deeded to the
State, and the instrument duly recorded in 1877, would
not, in our opinion, in the absence of proof tending to
show that there was no delivery of the deed, and with-
out the assertion by plaintiff of a valid claim of title to
the land, defeat the title of the State or change the
effect of the deed to the State, or overcome the pre-
sumption of delivery of the deed arising from the
recording of the same. If so, the title of the State to
its land, while its officers and agents are periodically
changing, would be of but little force or value. The
conveyance was apparently executed at the instance of,
and accepted by, some agent or attorney of the State.

4. The clerk of the State Land Board had no authority
to disclaim title to the tract of land for the board or
for the State. "The mere parol declarations against his
own interest of the owner of the record title are held
not evidence to defeat such title, as being inadmissible
under the statute of frauds." Buswell's Limitations and
Adverse Possession, § 236, citing *Jackson* v. *Cary,* 16
Johns (N. Y.), 302.

5. On the other hand, under Section 799, subd. 15,
L. O. L., creating the presumption that official duty has
been regularly performed, it should, we think, be
assumed that the deed referred to recorded in 1877, was
regularly accepted, pursuant to law, by the proper
officers of the State. *McLeod* v. *Lloyd,* 43 Or. 260 (71
Pac. 795: 74 Pac. 491). We hold that the title which
the State had, has not been extinguished by the running
of the statute.

It is contended by counsel for defendant that the
occupancy of plaintiff under his contract for the pur-
chase of the land inured to the benefit of defendant's
grantor, for the purpose of perfecting the title of the
latter by adverse possession. To this counsel for plain-
tiff answers that defendant expressly pleads his title

by deed from the State, and no other title; that the specific allegation that he derived his title by deed from the State of Oregon precludes him from proving title by adverse possession. This contention would seem tenable as far as proving the link of title from the State to defendant Van Blokland. Except for this muniment of title which is set out in the answer, defendant must rely upon his general denial and the allegation that he is the owner and in possession of the real property in question. This, we think, raises a question as to whether or not the defendant can avail himself of the statute of limitations for the purpose of showing title to his grantor the State of Oregon.

6. Even though the statute does not run against the State, adverse possession by the State for the statutory period will give title by prescription. *Eldridge* v. *Binghamton,* 120 N. Y. 309 (24 N. E. 462), 1 Cyc. 1121.

7. Where the general statute of limitations is relied upon as a defense for the purpose of showing title, and the defendant alleges ownership and the right of possession, it is not necessary to specially allege adverse possession for the statutory period under the provisions of Section 328, L. O. L. *Neal* v. *Davis,* 53 Or. 423 (99 Pac. 69; 101 Pac. 212), 1 Cyc. 1140; *Bird* v. *Sellers,* 113 Mo. 580; 588 (21 S. W. 91); *Miller* v. *Beck,* 68 Mich. 76 (35 N. W. 899.) The reason of this rule is stated in *Hill* v. *Bailey,* 8 Mo. App. 85, 87, as follows:

"When the statute is relied on as a bar to the remedy merely, it must be specially pleaded. * * But, where the title to real estate is in question, the operation of the statute is found to have a higher range. It is capable of conferring an absolute title. Hence it has long been held that a general denial of the plaintiff's title will suffice for the admission of evidence or adverse possession for the statutory period, because this will not merely bar the

remedy, but may establish a title in the defendant which will conclusively negative any ownership in the plaintiff. In other words, it sustains and verifies the denial of the plaintiff's title."

8. The agreement to surrender before expiration of the statutory period, based upon a valuable consideration, stops the running of the statute, and continued possession will not be considered as adverse. 1 Cyc. 1013; *Eldridge* v. *Parish,* 6 Tex. Civ. App. 35 (25 S. W. 49.)

9. As between the plaintiff and the State or its grantee, the occupancy of the plaintiff under his contract for the purchase of the land was that of a tenant, and did not inure to the benefit of the plaintiff, but to the benefit of the State, for the purpose of perfecting title by adverse possession. *Anderson* v. *McCormick,* 18 Or. 301-303 (22 Pac. 1062) ; *Rowland* v. *Williams,* 23 Or. 515, 523 (32 Pac. 402), 1 Cyc. 1004; *Mabary* v. *Dollarhide,* 98 Mo. 198 (11 S. W. 611; 14 Am. St. Rep. 639) ; *McAuliff* v. *Parker,* 10 Wash. 141 (38 Pac. 744.) It is clearly shown in the testimony that the State of Oregon through plaintiff Stephenson, its vendee, under the contract for the purchase of the land, was in the open, notorious, exclusive, and adverse possession of the land, under color of title from August 21, 1882, until December, 1898, more than the statutory period of 10 years, and whatever right accrued by such possession of plaintiff inured to the benefit of the State from which defendant Van Blokland deraigns title.

From the record and evidence on the part of plaintiff, as well as that of defendant, we think that plaintiff has failed to sustain the allegation of his complaint as to adverse possession of the land for the statutory period, and, as between the parties of this suit, that defendant is the owner in fee, and entitled to the possession of the whole of the land.

It follows that the decree of the lower court should be modified accordingly, and one entered here declaring defendant to be the owner in fee, and entitled to the possession of the land.     MODIFIED: DECREE RENDERED.