## LOVE et al. v. PHILLIPS et al.

No. 3793.   Decided June 29, 1922.   (208 Pac. 882.)

1. CANCELLATION OF INSTRUMENTS—EQUITY HAS JURISDICTION TO RELIEVE MISTAKE AS TO ANTECEDENT EXISTING LEGAL RIGHT. Where deeds were executed to affect an unequal division of real estate amongst heirs who believed that their rights were fixed by deeds executed by their father and mother, but which were invalid for nondelivery in the father's lifetime, equity had jurisdiction to grant relief from the consequences of their mistake.

2. ESCROWS—DEEDS PLACED FOR DELIVERY UPON GRANTOR'S DEATH, CHARGING LANDS WITH ANNUAL PAYMENT FOR GRANTOR'S LIFE UPON PENALTY OF RESCISSION, WERE HELD IN ESCROW. A contract whereby deeds were executed by a mother to her children, and placed with a lawyer for delivery upon her death, charging the lands conveyed with the annual payment to her of an

agreed sum for life on penalty of rescission, constitutes an escrow.

3. EXECUTORS AND ADMINISTRATORS—DECREE, QUIETING TITLE IN HEIR WHO WAS ADMINISTRATOR IN SUIT TO WHICH HE WAS A PARTY AS SUCH TO LANDS IN DISPUTE AMONGST REMAINING HEIRS, SET ASIDE. Where title was quieted in an heir who was also the administrator of the estate of the ancestor, through whom by arrangement during his lifetime he claimed title to the land, but which was in dispute amongst the remaining heirs, the decree will be set aside on the theory that as administrator he was bound to hold the assets of the estate for the benefit of creditors and parties entitled to a distributive share thereof.[1]

Appeal from District Court, Third District, Salt Lake County; *Ephraim Hanson,* Judge.

Suit by Fredrica Love and others against John L. Phillips and others. From a judgment for defendants, plaintiffs appeal.

AFFIRMED IN PART, reversed in part, and REMANDED, with directions.

*J. W. Stringfellow* and *Brigham Clegg,* both of Salt Lake City, for appellants.

*Hurd & Hurd* and *C. E. Marks,* all of Salt Lake City, for respondents.

GIDEON, J.

The plaintiffs in this action, with the exception of Luke Shaw, are children and heirs of Alfred and Fredrica Phillips. The plaintiff Shaw is the surviving husband of Fredrica Phillips Shaw, deceased. The defendants are likewise children and heirs of Alfred Phillips and Fredrica Phillips. Alfred W. Phillips in his representative capacity as administrator of

---

[1] *In re Burt's Estate,* 58 Utah 353, 198 Pac. 1108.

the estates of Alfred and Fredrica Phillips, is also a defendant.

Plaintiffs seek to have canceled and declared of no effect certain quitclaim deeds executed by each of the plaintiffs, save Luke Shaw, purporting to convey certain property to the defendants and to each other, and also certain other quitclaim deeds executed by defendants to plaintiffs respectively. The complaint, as amended, also asked that other quitclaim deeds executed by the mother, Fredrica Phillips, in 1907, purporting to convey her interest in certain property to each of the plaintiffs, except Shaw, and to each of the defendants be declared void and of no effect.

The defendant Alfred W. Phillips, in a separate answer, pleaded a counterclaim against the plaintiffs, and alleged ownership in the five acres of land described in said counterclaim. The defendants John L. Phillips, Edward R. Phillips, and Willis Phillips answered jointly, and alleged in a counterclaim their respective rights and ownership in the several pieces of property therein described claimed by each. These defendants asked a decree quieting title to such lands against any and all claims of plaintiffs. The defendants Ethelwin C. Hill and Priscilla Gordon answered jointly, denying the allegations of the complaint and alleging ownership severally in each of said defendants in the particular pieces of property described in that answer.

The court made findings and entered judgment dismissing the complaint, found the issues in favor of the defendants, and entered a decree quieting title in the several defendants against the plaintiffs to each parcel of land claimed by each defendant. From that judgment plaintiffs appeal.

Alfred Phillips, now deceased, in the year 1884, owned two tracts of land located just south of Salt Lake City in Salt Lake county, comprising approximately 37 acres. Phillips had 11 children, many of whom are now past middle age. In May, 1900, Alfred Phillips and his wife, Fredrica Phillips, executed deeds purporting to convey certain portions of the aforesaid acreage to their respective children. To each of the sons was given, or attempted to be given, five acres of

land; to each of the daughters one acre. Twelve deeds were executed. There is one tract referred to and known as the "six-acre tract." This property was included in a separate deed purporting to convey the same to the four sons in equal shares. The deeds were retained by the father during his lifetime, and after his death were in the custody and control of the mother for something like two years. It should be stated at this point that neither party contends that the deeds made by the father and mother were ever delivered so as to become effective in conveying title—in fact, both parties concede that they were never so delivered. Alfred Phillips died on or about the 26th day of February, 1905. The widow, Fredrica Phillips, remained in possession of the homestead, and apparently had control of and cultivated the farm for about two years, except such parts of the land as were occupied by her oldest son, Alfred W. Phillips, and possibly other parts occupied by one or two of the other heirs. At a later date, in the year 1907, the mother contemplated remarrying. At that time she called her children together. It affirmatively appears that the deeds executed by the father and mother had never been read to the grantees named therein until that time. It is apparent, however, that there was a general understanding in the family that certain particular property had been conveyed to each of the various heirs or children. It is fairly inferable from the testimony of both plaintiffs and defendants that all parties were of the opinion that the widow of Alfred Phillips had the right to occupy and receive the rents and benefits of this land during her natural life, regardless of the interests or rights of the other heirs. All parties seem to have proceeded and acted with that understanding, and no testimony is found in the record indicating any other conclusion, unless it is that of the defendant Alfred W. Phillips, the oldest son.

The mother apparently had two objects in calling her children together. It was her desire to be relieved of the care and duties incident to paying the taxes and farming the property, but at the same time she was desirous of receiving some annual compensation for the use of the farm. Another

object was that the mother desired some arrangement made between herself and the heirs whereby her second husband would not inherit any part of the property left by her former husband.  At that meeting these deeds were produced by the mother, and were read to the assembled heirs by one of the sons-in-law.  It is apparent that the contents of the deeds were not only a surprise but a disappointment to all of the girls, not so much in the fact that a deed had been executed to each daughter conveying only one acre, but because it seems to have been generally understood that the six-acre tract should become property of the female heirs. Shortly after that date another meeting of the heirs was held. At the first meeting it was decided that the presence of an attorney at law would be advisable, or, at least, that an attorney should be consulted as to what action, if any, should be taken.  The meeting was adjourned.  The heirs again met with the mother, and an attorney was present.  What was said and done at this second meeting is in dispute.  It is the testimony of plaintiffs that nothing was said at that time about the deeds being invalid because of nondelivery, but to the contrary they were told that at the death of the mother each would receive his or her respective deed.  It is also the testimony of plaintiffs that they were advised that upon delivery of these deeds no probate of the estate would be necessary, and that the only expense each grantee would incur would be the cost of recording his or her own deed.  On the other hand, it is the testimony of the attorney that he advised those present that the deeds executed by the father and mother were not effective to convey title for want of delivery; that if the heirs desired to carry out the intent of the father as expressed in the deeds executed by him it would be necessary for them as such heirs to quitclaim to each other, giving to each heir the particular property described in each of the deeds executed by the father and mother.

It is stated by the plaintiffs that all parties at that meeting were of the opinion, and, in fact, knew nothing to the contrary, that the deeds executed by the father and mother were valid and conveyed title, and that the subsequent acts

in executing quitclaim deeds were in no way influenced by the invalidity or ineffectiveness of the deeds executed by the father and mother. It is quite apparent, and in our judgment the testimony abundantly supports the statement, that until the second meeting held prior to the mother's remarriage neither the mother nor any of the children entertained any doubt respecting the validity of the deeds executed by the father and mother, and believed the same were final so far as the rights of the parties were concerned. The writer of this opinion entertains little doubt that the mother retained the belief until the date of her death. That the attorney stated to those present at the second meeting that the deeds were ineffective for want of delivery may well be conceded and admitted, but that the plaintiffs, and, in fact, some of the defendants, did not appreciate or understand the legal effect of what he stated is, in our opinion, abundantly supported by the weight of the testimony. Alfred W. Phillips, a witness in his own behalf as a defendant, on being directly asked if the plaintiffs knew and understood that the deeds of the father and mother were ineffective, answered in words to this effect, "They certainly did." That answer at most was merely the conclusion of the witness. No witness for the defendants attempted to repeat or give the substance of the language used, or any statement made, by any of the plaintiffs that they understood that the deeds of the father and mother did not convey title.

As a result of the second meeting quitclaim deeds, as above indicated, were prepared by the attorney to be executed by the various heirs. These deeds were executed shortly after such meeting. They were left with the attorney, and only one or two of them were ever delivered. At or about the same time the mother executed a quitclaim of her interest in the respective parcels to the grantees named in the respective deeds of the heirs. In connection with these quitclaim deeds made by the mother, each of the heirs entered into an agreement by which they undertook and agreed to pay the mother in consideration for her quitclaim $6 per acre per annum for the premises during her lifetime. These deeds of the mother,

together with a copy of the agreement, were delivered to the attorney with the understanding that they were to be delivered to the several heirs after the death of the mother. The contract between the mother and each of the several heirs was identical except as to the description of the property. She was described as the first party, and the grantee named in the deed as the second party. The contract contained a proviso that if the grantee named in the particular quitclaim deed failed or neglected to pay the stipulated rent mentioned in the contract the mother had the right and authority to rescind such deed.

The mother remarried in 1907 and died in 1918. The plaintiff, Luke Shaw, is her surviving husband. After the death of the mother the parties plaintiff and defendant in this action met again at the old home. It is the testimony of the plaintiffs and, inferentially at least, of some of the defendants, that the heirs gathered at that meeting expected to have delivered to them and to receive the original deeds executed by the father and mother. One of the plaintiffs, Mrs. Gordon, a resident of Idaho, was exceedingly anxious to return home at an early date after her mother's funeral. She testified that at that meeting she requested that she be given the deed conveying title to her. She also testified that she was informed by her brother, Alfred W. Phillips, that the deeds were with the attorney, and that she could call at his office and get hers. According to the testimony of this witness it was at that meeting that the first intimation was given to her that the deeds executed by her father and mother were ineffective to convey title. This witness also testified that upon such intimation being made she inquired directly, "Were those deeds no good?" and that one of the defendants answered that the original deeds were good and valid, and that they were in the hands of their attorney. That meeting adjourned to the following evening, and the same attorney was requested to be and was present. It is the testimony of Mrs. Gordon and the other plaintiffs that at this meeting they were advised for the first time that the deeds of the father and mother did not convey title, and were in-

effective by reason of nondelivery. Plaintiffs' testimony is all to the effect that, if they had understood at the meeting prior to the mother's remarriage that the deeds made by the father and mother were invalid, they never would have executed quitclaim deeds releasing their interests in their father's estate to the several heirs. It is evident from the oral opinion of the trial judge, found in the record, that he had no doubt that the plaintiffs did not understand or know of the invalidity of the deeds of the father and mother at the time they executed the quitclaim deeds. In reviewing the testimony as to the state of mind of the plaintiffs at the time of the execution of the quitclaim deeds the judge said:

"Those facts are simply these, as established by the plaintiffs in this case: They thought there were some valid deeds in existence. Now, the evidence on that point is as to their own condition of mind, and it (their condition of mind) seems to be pretty well established by the plaintiffs' testimony."

The court, however, was of the opinion that the fact that the plaintiffs were mistaken as to the legal effect of the deeds of the father and mother did not entitle them to any relief. The court seems to have been of the opinion that a mistake must be a mutual mistake or the acts induced by fraud on the part of the parties against whom relief is sought. The learned trial judge expressed his own views as to the injustice and inequity of the division made, and said that he had carefully listened to the testimony with the hope that he might be able to find or discover some theory upon which he could base a decree annulling or setting aside these several conveyances by and among the heirs. It should be stated that the parties to this action are very illiterate. Their education is limited, and it was natural that they did not readily appreciate or understand their legal rights. The plaintiffs testified affirmatively, and it is nowhere contradicted, except by the conclusions of the defendants, that they understood that the deeds executed by the father and mother conveyed title. The deeds were there before them. They had been regularly executed before a notary public by the father and mother, and were in every way regular so far as execution is concerned. It is not at all improbable that the question

of delivery as a necessary element in passing title was not understood or appreciated by plaintiffs, and would not suggest itself to or be understood either by the plaintiffs or the defendants. We are thoroughly convinced that the plaintiffs executed the quitclaim deeds in 1907 under a misapprehension or mistake as to their legal rights in the property of their father's estate.

The question for determination is: Has a court of equity, by reason of such facts as appear in this record, power or authority to grant relief? We are of opinion that it has, and, further, that it is the duty of such court to grant the parties relief. There was no consideration for the execution of any of the quitclaim deeds except the release or conveyance by the other heirs to the parties executing such quitclaim deeds of their interest in the lands belonging to the father's estate. This is therefore a case in which a court can, without injury to others, relieve the parties from their mistake and therefore do justice to all concerned.

The general principle which we think should control in such cases as this is clearly and concisely stated in 2 Pomeroy, Eq. Jur. (3d Ed.) § 849. That section is found in the chapter devoted to the jurisdiction of equity respecting "Mistake." The title of section 849 is:

"Relief where a party is mistaken as to his own existing legal rights, interest, or relation."

The learned author, in discussing that question says:

"I therefore venture to formulate the following general rule as being eminently just and based on principle, and furnishing a simple criterion defining the extent of the jurisdiction. The number of decisions which support it, and which it explains, is very great. Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities, or other relation, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or relations, or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact."

Black on Rescission and Cancellation, in section 148, quotes the above general rule, and cites numerous cases in support of the same. See, also, Story, Eq. Jur. (14th Ed.) §§ 184-186.

The second headnote in *Re McFarlin et al.*, 75 Atl. 281 (9 Del. Ch. 430), is as follows:

"A mistake by a party as to his antecedent existing legal rights, as distinguished from a mistake as to the legal import of the act done, furnishes a ground for equitable relief from the consequences of the mistake in cases where the mistake can be rectified without injury to the rights of others."

Applying the above principles to the facts in the present case, we are of the opinion that the district court erred in holding that a court of equity was without power to grant the plaintiffs any relief. There was no question in this case of a compromise of doubtful legal rights. If the original deeds of the parents were invalid by reason of nondelivery, the rights of the parties were fixed by the law of succession. There was therefore nothing to compromise. If the parties had voluntarily entered into an agreement, uninfluenced by the father's deeds, for a division of the property left by the father, then a different question would be presented. Clearly such was not the intent of any of the parties in making or receiving the quitclaim deeds. The plaintiffs, believing that their rights were fixed by the deeds of the parents, were to that extent at least mistaken as to their legal rights. If the defendants were advised and knew that the deeds of the parents were invalid and conveyed no title and at the same time knew or had reason to believe that the plaintiffs were ignorant of such fact, then failure on the part of defendants to disclose and make known the rights of plaintiffs would be actual fraud.

It is next contended that the deeds executed by the mother and left with the attorney to be delivered after her death were ineffectual and void by reason of the fact that the mother had the right to recall and repossess such deeds in the event of failure of the grantees to pay the stipulated yearly rental provided in the contract. That contract, by and under which the deeds were left with the attorney, constitutes an escrow agreement under all the definitions of an escrow found

in the cases.  21 C. J. 865.  The court found that each of
the second parties to these agreements had paid the stipulated
rental.  At any event, the mother had never recalled or re-
possessed any of the deeds.  Under the court's finding that
the heirs met the requirements of the escrow contract it be-
came the duty of the attorney, after the death of the
mother, to deliver the deeds to the several grantees. , It        2
does not appear that the mother retained any right to
recall the deeds unless there was a failure on the part of the
second parties to the contract to pay the stipulated rental and
to pay the taxes upon the premises.  The very nature of an
escrow agreement is that it is to be delivered to some third
party to be held by him for delivery to the beneficiary or
grantee upon the happening of some contingency or the per-
formance of some duty.  The court having found that the
grantees in these several deeds had performed the conditions
upon which the deed should be delivered, we see no reason to
disturb that part of the court's judgment.

It is claimed on the part of plaintiffs that the court erred
in making findings and entering a decree quieting title in de-
fendant Alfred W. Phillips to the five acres claimed by him
as against any claims or rights of the plaintiffs.  It is ap-
parent that shortly after the marriage of Alfred W. Phillips,
in about the year 1883 or 1884, some arrangement was had
between this defendant and his father, Alfred Phillips, re-
specting this particular five-acre tract.  At that time the title
was in the father and remained there until the time of his
death.  Alfred W. Phillips occupied the premises under this
arrangement, made some improvements thereon in the way
of buildings, and has farmed and resided upon the property
ever since.  It is also in the record that he has paid the taxes
on this particular property since about the date he. first oc-
cupied it.  At least some of the recent acts of this defendant
throw some doubt upon the claim that he considered this land
his property, divested of any claim of right of Alfred Phil-
lips or his heirs.  His testimony at the hearing respecting the
time of remodeling his home and his dealings with his mother
and other heirs since his father's death do not support the

argument that this five-acre  tract was the exclusive property
of this defendant.  We, however, express no opinion as to
what his rights may ultimately be found to be in this five-acre
tract.  We are, however, clearly of the opinion that in
this action the decree quieting the title in the defend-        **3**
ant Alfred W. Phillips as against the plaintiffs should
be set aside and annulled.  Alfred W. Phillips is the admin-
istrator of the estate of Alfred Phillips.  The plaintiffs, as
heirs, are vitally interested in the assets of that estate, or any
property belonging to it.  It is the duty of an administrator,
not only to preserve, but to recover, any property belonging
to the estate of which he is administrator for the benefit of
the creditors and the heirs of the estate.  If there is any ques-
tion as to the ownership of this particular five-acre tract,
manifestly the administrator should not be permitted, in an
action wherein he is a party as the representative of the es-
tate, to obtain a decree quieting the title to the property as
against any of the heirs in himself personally.  Executors and
administrators are quasi trustees, and hold the assets of es-
tates for the benefit of the creditors and the parties entitled
to a distributive share of the same.  There is no conflict in
the authorities holding such to be the law.  *Justice* v. *Wilkins,*
251 Ill. 17, 95 N. E. 1025; *In re Manser's Estate,* 60 Or. 247,
118 Pac. 1026.  See, also, *In re Burt's Estate,* 58 Utah, 353,
198 Pac. 1108.

The decree quieting title to the premises in the remaining
defendants is founded upon the rights acquired by such de-
fendants under the conveyances made by the heirs.  It neces-
sarily follows from what has been said that such decree quiet-
ing title in the other defendants should be set aside and
annulled.

The judgment of the district court, holding that the con-
veyances made by the mother, Fredrica Phillips Shaw, of her
interest in the lands to the several heirs are effective and
valid, is affirmed.  The order dismissing the complaint is set
aside.  The order quieting title to the premises in the several
defendants is set aside and annulled.  The cause is remanded
to the district court of Salt Lake county, with directions to

correct its findings, conclusions of law, and judgment in accordance herewith. Costs on this appeal to be divided equally between the individual plaintiffs and the individual defendants. No part of the costs are to be taxed against Alfred W. Phillips as administrator.

CORFMAN, C. J., and WEBER, THURMAN, and FRICK, JJ., concur.